Donald D. PATRICK, Owner of THE Barge WILMINGTON,

v.

THE Tug FLORENCE, her engines, boilers, etc., and her Owner, Florida Towing Corporation, and THE Barge OIL TRANSFER NO. 23 and her owner, Oil Transfer Corporation, Respondents,

THE Tug PASSYUNK, and Quaker City Navigation Company, and Jean V. Patrick, Impleaded Respondents.

CHESTER BLAST FURNACE, Inc.,

v.

THE Tug FLORENCE, her engines, boilers, etc., and her Owner, Florida Towing Corporation,

Donald D. Patrick, as Owner and Claimant of the Tug Passyunk, Jean V. Patrick and Quaker City Navigation Company, Impleaded Respondents.

Nos. 259 of 1955, 495 of 1956.

United States District Court
E. D. Pennsylvania.

July 30, 1958.

The tug Passyunk, with the barge Wilmington made up on her starboard side, having discharged a cargo of coke at Chester, Pennsylvania, backed out of the slip on the Pennsylvania side of the river, straightened out and was proceeding upstream on the New Jersey side of the channel. The tide was flood. There was a light rain, but visibility was good.

The tug Florence, pushing the barge Oil Transfer No. 23 ahead, had left Paulsboro, New Jersey, an hour or more earlier and was coming downstream also on the New Jersey side of the center line of the channel.

Both flotillas were showing proper lights. The Passyunk sighted the Florence at a distance of about two miles upstream and blew a one-blast signal. She may have been at that time too far from the Florence for the latter to have heard it. At any rate, Captain Patrick of the Passyunk thought it likely that she was and blew a second one-blast signal when the vessels were about three-fourths of a mile apart. Neither signal was answered. Both vessels proceeded on their respective courses. Captain Patrick repeated his one-blast passing signal and shortly thereafter, with the vessels 300 to 400 feet apart, blew the danger signal and reversed his engines. The collision followed.

 The fault of the Florence is too plain to require much discussion. Immediately before the collision, the captain was lying down in his cabin just behind the wheel-house, the mate was at the wheel and the two were engaged in conversation. It must have been an absorbing one because the mate neither heard the Passyunk's signals nor saw her lights until it was too late to avoid the collision. No conclusion can be drawn except that he was paying scant attention to the navigation of his vessel. In addition, the Florence was on the wrong side of the channel, so far over as to make any attempt at a port to port passing hazardous for the other vessel. Although Captain Moore had a fairly logical reason for coming down on the

Beechwood, Lovitt & Murphy, by Miles Warner, Philadelphia, Pa., for Donald D. Patrick and impleaded respondents in both actions.

George Francis Blewett, Philadelphia, Pa., for Chester Blast Furnace, Inc.

LaBrum & Doak, by Daniel J. Ryan, Philadelphia, Pa., for respondents.

KIRKPATRICK, District Judge.

These suits in admiralty, consolidated for trial, arise from a collision which occurred in the Delaware River on the New Jersey side of the channel in the Chester Range at about one o'clock on the morning of December 14, 1954.

New Jersey side, I do not think it was sufficient to justify his violation of the rules. No lookout was posted, and it has been held more than once that a wheelsman is not a sufficient lookout, but that, in addition, another seaman should be assigned to that duty. See 33 U.S.C.A. § 221, Note 54.

The question of fault on the part of the Passyunk is not quite so simple. However, the Florence was showing both red and green lights continuously from the time Captain Patrick picked her up until the collision, indicating that she was coming straight on without change of course. Disregarding the first one-blast signal (which probably could not have been heard), from the time that the second signal was given (which Captain Patrick was justified in believing the Florence should have heard) it was apparent that unless one or the other of the vessels took prompt action there would be a collision. Actually, Captain Patrick, with no acknowledgment of his signal from the Florence, allowed some seven minutes to go by, during which time the vessels were approaching one another on a collision course, before he did anything. Without trying to be dogmatic about what he should have done, it can be said that he has not demonstrated that his failure to blow the danger signal rather than repeat his passing signal for the third time could not have avoided the collision. See Tank Barge Hygrade, Inc., v. The Gatco New Jersey, 3 Cir., 250 F.2d 485. It may be that if he had backed his engines prematurely he would have swung his tow across the channel and aggravated the situation, but on the other hand, had he sounded his danger signal earlier, he might have got the attention of the tug Florence which then could have taken action to avoid the collision.

Neither of the barges can be held liable and, as a matter of fact, I find no fault on the part of either.

The damages will, therefore, be divided equally between the Passyunk and her owner on the one hand and the Florence and her owner on the other.

■ Chester Blast Furnace, Inc., undoubtedly lost a substantial amount of its property when the Wilmington sank. Unfortunately, there is no competent evidence in the record from which I can find the quantity of coke which remained in her after she unloaded at Chester, or its value. I award Chester Blast Furnace nominal damages and costs.

■ The barge Wilmington was a total loss, and I find that as of the time of the collision her value was $3,500. I do not think the libellant is entitled to any damages, based on her prospective earnings.

A decree in accordance with the foregoing may be submitted.

### Answers to Requests

The parties have submitted detailed requests for findings of fact and conclusions of law which have been helpful to the Court but which need not all be answered, inasmuch as I believe that, in the foregoing opinion, I have covered the matters relating to the navigation of the vessels as fully as necessary. However, I will affirm the Patrick requests for findings of fact Nos. 1, 2, 3, 4, 9, 10, 11, 12 and 19. Request No. 21 correctly states the fact but is immaterial.

I affirm the Florence requests for findings of fact Nos. 1 to 12 inclusive. No. 30 is affirmed. However, the violation of this requirement, if any, is purely technical and is immaterial in this case. The vessel was not operating in excess of 12 hours, which would have required an additional shift, and the absence of the four men who would have made it up could have had nothing whatever to do with this collision. I affirm Nos. 35 and 36.

I affirm the following requests of the Chester Blast Furnace: Nos. 1, 2, 3 and 5.

The answers to the remaining requests are unnecessary in view of the foregoing opinion.